THE BOARD OF EDUCATION OF THE SCHOOL DISTRICT
OF THE TOWNSHIP OF EDISON, IN THE COUNTY OF
MIDDLESEX, A MUNICIPAL CORPORATION, PLAIN-
TIFF-APPELLANT, v. EDISON TOWNSHIP EDUCATION
ASSOCIATION AND AMERICAN ARBITRATION ASSO-
CIATION, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued June 6, 1978—Decided July 5, 1978.

Before Judges HALPERN, LARNER and KING.

*Mr. R. Joseph Ferenczi* argued the cause for appellant Board of Education of the School District of the Township of Edison.

*Mr. Jack Wysoker* argued the cause for respondent Edison Township Education Association (*Messrs. Mandel, Wysoker, Sherman, Glassner & Weingartner,* attorneys; *Mr. Stephen E. Klausner,* of counsel).

The opinion of the court was delivered by

LARNER, J. A. D. This is another appeal involving the recurring question in the ever-present controversies between boards of education and representative organizations of teachers relating to the arbitrability of grievances. The parties herein were governed by a collective bargaining agreement, effective from July 1, 1975 through June 30, 1976,

which provided for arbitration as the final method of resolution of a teacher's grievance.

The grievance procedure, including arbitration, covers a broad spectrum of disputes in the following language:

"A grievance" is a claim based upon an event or condition which affects the welfare and/or terms and conditions of employment of a teacher and/or the interpretation, meaning, or application of any of the provisions of this agreement.

The particular controversy underlying this litigation arose out of the decision by the Board of Education of the School District of the Township of Edison (board) on August 10, 1976 to deny salary increments to three teachers for the ensuing year. The Edison Township Education Association (Association) filed grievances on behalf of these teachers in compliance with the provisions of the collective bargaining agreement. After adverse decisions at the various levels of administrative grievance procedures, the Association demanded arbitration as a final step in the resolution of the dispute relating to the three teachers.

The board agreed to submit the limited question of arbitrability to the arbitrator, who concluded that the grievances were arbitrable. Thereupon the board filed a complaint seeking to enjoin arbitration of the merits of the dispute on the ground that the right of the board to withhold increments is a management decision beyond the scope of permissible arbitration, and that the Commissioner of Education has exclusive jurisdiction to consider the matter.

The trial judge dismissed the complaint for lack of jurisdiction apparently on the basis that injunctive relief is cognizable before the Public Employment Relations Commission (PERC) in conjunction with its statutory prerogative to determine the scope of collective negotiations under *N. J. S. A.* 34:13A–5.4(d), citing *Plainfield Bd. of Ed. v. Plainfield Ed. Ass'n,* 144 *N. J. Super.* 521 (App. Div. 1976).

Reliance by the trial judge upon Plainfield as the basis for dismissal was unwarranted. The litigation herein

does not involve an issue of scope of negotiations or injunctive relief incidental thereto. It concerns rather the arbitrability of the grievances under the existing agreement and applicable law—questions which are preeminently appropriate for determination by the courts and not PERC. See, *e.g., Clifton Bd. of Ed. v. Clifton Teachers Ass'n,* 154 *N. J. Super.* 500 (App. Div. 1977); *Neptune City Bd. of Ed. v. Neptune City Ed. Ass'n,* 153 *N. J. Super.* 406 (App. Div. 1977). This conclusion is buttressed by the proper refusal of PERC to decide questions as to the contractual interpretation of an arbitration clause. *Hillside Bd. of Ed. v. Hillside Ed. Ass'n,* PERC No. 76–11, 1 NJPER 55 (1975).

Although we reject the legal ground for the decision below, we affirm the order of dismissal for other reasons presented herein.

The major issue on this appeal is whether the withholding of increments is a permitted subject for arbitration under the collective bargaining agreement or is effectively exempt therefrom under controlling law. More specifically, do the provisions of *N. J. S. A.* 18A:29–14, dealing with the right of a school board to withhold increments "for inefficiency or other good cause" and authorizing an aggrieved staff member to appeal to the Commissioner of Education, negate the power and duty of the board to arbitrate such a grievance pursuant to *N. J. S. A.* 34:13A–5.3 and its agreement with the association?

*N. J. S. A.* 18A:29–14 in pertinent part provides:

Any board of education may withhold, for inefficiency or other good cause, the employment increment, or the adjustment increment, or both, of any member in any year * * *. It shall be the duty of the board of education, within 10 days, to give written notice of such action, together with the reasons therefor, to the member concerned. The member may appeal from such action to the commissioner under rules prescribed by him.

There can be little doubt that the determination by the board that the affected individuals were not entitled to increments because of "inefficiency or other good cause" was

a matter within the compass of the grievance provision and final availability of arbitration contained in the collective bargaining agreement. Since the board's determination affects the "welfare" and relates to the "terms and conditions of employment" of three particular teachers, they have the contractual right, individually or through the Association, to process a grievance from any adverse decision through the final remedy of arbitration.

The board contends that arbitration of this controversy is prohibited by law for two reasons: because the withholding of salary increments involves management prerogative decisions pertaining to educational policy, and because the aggrieved teachers have an exclusive statutory right of appeal to the Commissioner of Education. It is manifest that if the board is correct in either of these two contentions, then the matter may not be arbitrated and the decision below must be reversed; however, if both arguments fail, then the decision must be affirmed and the arbitration allowed to proceed.

■ The board's contention that the withholding of increments from individual teachers represents management prerogative or educational policy determination which inhibits a board from arbitrating or agreeing to arbitrate the teachers' grievances relating to that determination is not persuasive and we reject it. Reference to *Dunellen Bd. of Ed. v. Dunellen Ed. Ass'n,* 64 *N. J.* 17 (1973), in this connection is misplaced.

We are not concerned here with an effort to negotiate away by a collective bargaining agreement the right to withhold increments for the statutory reasons of "inefficiency or other good cause." Such an effort or such a provision in a consummated agreement would be unenforceable as violative of the statutory power of the board to exercise its prerogative to implement the statute. See *Clifton Teachers Ass'n v. Clifton Bd. of Ed.,* 136 *N. J. Super.* 336 (App. Div. 1973).

The consequence of an agreement to abdicate the board's management responsibilities authorized by *N. J. S. A.* 18A:

29–14 is materially distinguishable from an agreement to arbitrate the propriety of the board's finding that particular teachers be denied increments because of inefficiency or other good cause. In such a context, the propriety of the board's action regarding the teachers does not involve a management or policy decision. *Cf. Clifton Teachers Ass'n v. Clifton Bd. of Ed., supra,* 136 *N. J. Super.* 336. It involves the issue whether the statutory criterion of inefficiency or other good cause has been demonstrated as a justifiable reason for the denial of the increments. Since the board does not have absolute power to withhold increments for any reason or no reason, the question whether its decision to do so in a particular instance is based on inefficiency or other good cause is manifestly a proper subject of grievance and arbitration.

It is highly significant that Justice Jacobs, who authored the trilogy of Supreme Court opinions in *Dunellen Bd. of Ed. v. Dunellen Ed. Ass'n, supra,* 64 *N. J.* 17; *Englewood Bd. of Ed. v. Englewood Teachers,* 64 *N. J.* 1 (1973), and *Burlington Cty. Col. Fac. Ass'n v. Bd. of Trustees,* 64 *N. J.* 10 (1973), pointed out in *Dunellen*:

> In the matter at hand we are not concerned with the dismissal of any individual teacher, nor are we concerned with the rights of any individual teacher. [64 *N. J.* at 29]

In the case before us we *are* concerned with the denial of increments to individuals and the rights of individual teachers. And thus the basic thesis of the *Dunellen* trilogy and its progeny relating to the nonnegotiability and nonarbitrability of management prerogatives and educational policy decisions vested in school boards is inapplicable to the issue herein.

We next turn to that portion of *N. J. S. A.* 18A:29–14 which provides that an aggrieved teacher may appeal to the Commissioner from the denial of an increment, and its relationship and correlation with the 1974 amendment of *N. J.*

*S. A.* 34:13A–5.3[1] which expresses the legislative policy toward contractual grievance procedures in public employee contracts in the following:

Notwithstanding any procedures for the resolution of disputes, controversies or grievances established by any other statute, grievance procedures established by agreement between the public employer and the representative organization shall be utilized for any dispute covered by the terms of such agreement. [*L.* 1974, *c.* 123, § 4]

The board asserts that *N. J. S. A.* 18A:29–14, dealing as it does with the specific subject of withholding of increments, establishes a right of review of the board's action by application to the Commissioner of Education. It therefore claims that this specific statute represents an exclusive method of testing the validity of the board's denial of increments, which method would prevent the implementation of the arbitration provision of the collective bargaining agreement in this area of decision.[2]

We disagree.

When the Legislature amended the New Jersey Employer-Employee Relations Act (*N. J. S. A.* 34:13A–1 *et seq.*) in 1974 it clearly opted for a policy of resolution of grievances via the method established by collective bargaining agreements between the public employer and the representative organization in preference to any other statutory procedures for resolution of grievances. The legislative history convincingly supports this conclusion.

■ During a hearing on the proposed amendments to the act in 1974 (Senate Bill 1087), the New Jersey State

---

[1]Adopted subsequent to the opinions in the *Dunellen* trilogy.

[2]The board also points to *N. J. S. A.* 18A:6–9, vesting the Commissioner with power to "hear and determine * * * all controversies and disputes arising under the school laws," and the general provision of the collective bargaining agreement that "The arbitrator shall be without power or authority to make any decision which requires the commission of an act prohibited by law. * * *"

League of Municipalities urged that the provision which was finally adopted as *N. J. S. A.* 34:13A–5.3 (*L.* 1974, *c.* 123, § 4) should be eliminated in order to retain existing procedures for resolution of disputes contained in the Education Act (*Title* 18A) and the Civil Service statutes (*Title* 11). *Public Hearing on Senate Bill No.* 1087, *Senate Conference and Coordinating Committee and Assembly Labor Committee* at 125A–127A (May 7, 1974) (statement of Gerald L. Dorf). In fact, Assembly Bill 1705, which would have preserved the Commissioner's exclusive review of controversies under the school laws, was unsuccessfully introduced to accord with this very position. After full airing of competing views and interests, the Legislature finally adopted and the Governor signed Senate Bill 1087, which contained the significant provision cited above as well as a provision (*L.* 1974, *c.* 123, § 6) deleting a clause in *N. J. S. A.* 34:13A–8.1 which had provided: "nor shall any provision herein amend or nullify any statute or statutes of this State." In our opinion, the passage of this legislation, coupled with the concurrent failure to pass Assembly Bill 1705, represents an express legislative determination that procedures for resolution of grievances should thereafter be controlled by the terms of collective bargaining agreements notwithstanding any contrary procedures contained in other statutes.

In considering the New Jersey Employer-Employee Relations Act as it existed prior to 1974, when it contained the provision that nothing in the act should be construed "to annul or modify any statute or statutes of this State", we held in *Red Bank Bd. of Ed. v. Warrington*, 138 *N. J. Super.* 564 (App. Div. 1976), that the general provision of *N. J. S. A.* 18A:6–9 granting jurisdiction to the Commissioner to determine all controversies "arising under the school laws" did not bar contractual arbitration of a grievance relating to a term and condition of employment. The opinion significantly notes:

The New Jersey Employer-Employee Relations Act evidences a clear legislative intent that disputes over contractual terms and

conditions of employment should be solved, if possible, through grievance procedures. We are convinced, moreover, that where provision is made for binding arbitration of such controversies, recourse for their resolution must be by that means, and not to the Commissioner, for to hold otherwise would effectively thwart and nullify the legislative design expressed in the New Jersey Employer-Employee Relations Act.

Our conclusion is buttressed by two of the 1974 amendments to the New Jersey Employer-Employee Relations Act (L. 1974, c. 123), which appear to supply the clarification mentioned in *Dunellen Bd. of Ed. v. Dunellen Ed. Ass'n, supra.* One (§ 6) amends *N. J. S. A.* 34:13A–8.1 by deleting from it the clause "nor shall any provision hereof annul or modify any statute or statutes of this State." The other (§ 4) adds to *N. J. S. A.* 34:13A–5.3 this sentence:

* * * Notwithstanding any procedures for the resolution of disputes, controversies or grievances established by any other statute, grievance procedures established by agreement between the public employer and the representative organization shall be utilized for any dispute covered by the terms of such agreement.[3] [at 572]

The board urges that the provision in *N. J. S. A.* 18A: 29–14, which directs that an appeal from the denial of an increment shall be taken to the Commissioner of Education, survives as a specific exclusive method of resolving a dispute relating to the withholding of an increment. It submits that this statutory provision dealing with the appellate procedure in the specific area of increments prevails over the general provisions of *N. J. S. A.* 34:13A–5.3, under the general principle of construction that when there is a conflict between a specific and a general statute, the specific shall prevail. See, *e. g., Kingsley v. Wes Outdoor Advertising Co., 55 N. J.* 336, 339 (1970) ; *State Highway Comm'r v. Dilley, 48 N. J.* 383, 387 (1967).

---

[3] In *Red Bank* the issue arose under a negotiated contract for the period of July 1, 1972 to June 20, 1974. As a consequence, the 1974 amendment was not directly involved.

We further note that *Piscataway Bd. of Ed. v. Piscataway Maintenance, etc., Ass'n*, 152 *N. J. Super.* 235 (App. Div. 1977), is distinguishable from the case at bar because the contract therein was entered into prior to 1974, and any discussion in dictum of the 1974 amendments did not relate to the specific amendment (*L.* 1974, *c.* 123, § 4) now in issue.

As already noted, we conclude the converse — namely that, because of its strong language and persuasive legislative history, the 1974 amendment of *N. J. S. A.* 34:13A–5.3 supersedes the appellate procedure contained in *N. J. S. A.* 18A: 29–14 in the situation where the parties have entered into a collective bargaining agreement which itself incorporates a grievance procedure including arbitration. Moreover, as we view both statutes, there is no inherent inconsistency which would affect the viability of the provision in *Title* 18A.

In the event that there is no collective bargaining agreement between a representative organization and a board of education, or in the event such an agreement does not contain a grievance procedure leading to arbitration, the aggrieved individual would have to seek relief by appeal to the Commissioner, as mandated by *N. J. S. A.* 18A:29–14. This appellate procedure is superseded by *N. J. S. A.* 34:13A–5.3 only in those school districts where an agreement has been entered into which creates its own method of resolving grievances and disputes. In those districts this legislative enactment substitutes the agreed upon grievance procedure for the appeal to the Commissioner, while there is retained for individual employees, unrepresented and unprotected by a contractual grievance provision, the right to submit their grievances to the Commissioner under *N. J. S. A.* 18A:29–14. Thus, both statutes have a reason for existence and can coexist harmoniously.

We thus conclude that since the subject matter of the controversy herein does not pertain to major educational policy or management prerogative, it is an appropriate subject for grievance and arbitration under the collective bargaining agreement. Furthermore, the 1974 amendment to the New Jersey Employer-Employee Relations Act permits the use of such grievance procedure in testing the propriety of the board's denial of increments. We note as a caveat, however, that if the subject matter in dispute did relate to major educational policy or management prerogative, negotiation and arbitration would not be appropriate under the doctrine

of the *Dunellen* trilogy, which remains viable despite the 1974 amendment to the statute. See *In re Englewood Bd. of Ed.,* 150 *N. J. Super.* 265, 270 (1973); *Union Cty. Bd. of Ed. v. Union Cty. Teachers Ass'n,* 145 *N. J. Super.* 435 (1976), certif. den. 74 *N. J.* 248 (1977); *Patrolmen's Benev. Assn. v. Elizabeth,* 146 *N. J. Super.* 257, 262 (App. Div. 1976).

In view of the foregoing, we find that there is no legal basis for the restraint of arbitration sought in the complaint, and its dismissal is therefore affirmed. The parties are free to continue with the arbitration of the merits of the grievances.